UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

CHEX SYSTEMS, INC.,
a Minnesota corporation,

        Plaintiff,

                                     CASE NO.: 8:10-CV-02465-VMC-MAP

v.

DP BUREAU, LLC, a Florida limited liability
company and CL VERIFY, LLC, a Florida
limited liability company,

        Defendants.

_____

**PLAINTIFF CHEX SYSTEMS, INC.'S**
**MOTION TO FILE REDACTED EXHIBITS**

Plaintiff, Chex Systems, Inc., by and through undersigned counsel, hereby moves this Honorable Court for entry of its order directing the Clerk of Court to return certain exhibits to counsel for Plaintiff and allowing Plaintiff to file redacted exhibits, attached hereto ("Redacted Exhibits") as **Exhibits A-D**, in support of its Complaint, and states as follows:

1.      On January 15, 2003, non-party eFunds Corporation, through its wholly owned subsidiary, Chex Systems, Inc. ("Plaintiff"), and DP Bureau, LLC entered into the Information Resale Agreement (as amended, the "Resale Agreement") whereby the Plaintiff agreed to make available certain confidential and proprietary information to the resellers, DP Bureau and, by amendment, CL Verify, LLC, for resale to end users. In return, the parties' agreement permitted Plaintiff to charge resellers DP Bureau, LLC and CL Verify, LLC (collectively, "Defendants") a service fee, calculated based on Plaintiff's transaction pricing contained in the parties' Resale Agreement.

2.     Plaintiff's Complaint states claims against Defendants for breach of the Resale Agreement on multiple counts: (i) Defendants' failure to obtain prior written authorization from Plaintiff before assigning, or by otherwise consenting to the assignment of, certain end user agreements in contravention of section 7 of the Resale Agreement; (ii) Defendants' failure to contribute data as required by section 28 of the Resale Agreement and neglect to obtain from each end user prior written consent to such data contribution; and (iii) Defendants' non-payment of amounts invoiced for services provided by Plaintiff, in breach of section 3 of the Resale Agreement. [Doc. No. 1 ].

3.     In support of these claims, Plaintiff attached certain exhibits to its pleading. These exhibits consisted of: (i) the parties' original Information Resale Agreement, dated January 15, 2003, containing section 7, titled *End User Agreement*, which Plaintiff alleges Defendants' breached in count I of its Complaint [Doc. No. 1-A]; (ii) the April 30, 2009 amendment to the Information Resale Agreement that added CL Verify, LLC as a party to the agreement [Doc. No. 1-B]; (iii) the January 21, 2005 amendment to the Information Resale Agreement, adding section 28, titled *Data Contribution & Rules of Participation*, to the agreement, the breach of which section forms the basis of count II of Plaintiff's Complaint [Doc. No. 1-C]; and (iv) copies of the unpaid invoices for the months of August, September and October 2010 that were provided to Defendants and evidence the past due amounts for services rendered by Plaintiff, as alleged in count III of the Complaint [Doc. No. 1-D].

4.     Defendants filed their Answer and Affirmative Defenses, Counterclaim and Third Party Complaint [Doc. No. 9] on November 29, 2010. Defendants' Counterclaim purports to state four causes of action, including claims for: (i) Plaintiff's alleged tortious interference with Defendants' business relationship with its end users purportedly caused by Plaintiff's

"publishing in [its] pleadings the...list of end users, terms or pricing, frequency and volume of sales, and other proprietary and confidential information..." allegedly identified in the documents attached to the Complaint; (ii) Plaintiff's supposed violation of Florida's Uniform Trade Secrets Act (the "UTSA") by its filing of the Information Resale Agreement, the amendments to the Information Resale Agreement, and the invoices submitted to Defendants by Plaintiff for services rendered pursuant to the terms of the Resale Agreement, as exhibits to the Complaint; and (iii) Plaintiff's alleged willful and malicious violation of the UTSA when attaching such exhibits to its filing. [Doc. No. 9]. Further, Defendants' Third Party Complaint purports to state causes of action against Third-Party Defendants Martin Romain, an officer and employee of Plaintiff, Mark O. Wilhelm, II, in-house counsel, officer and employee of Plaintiff, and David M. Wells, trial counsel for Plaintiff, for violation of the UTSA and willful and malicious violation of the UTSA, as well as Mr. Wells' employer, Gunster, Yoakley and Stewart, P.A., on theories of respondeat superior and negligent supervision. [Doc. No. 9].

6.     In their pleading, Defendants claim that the alleged misappropriation occurred when Plaintiff "attached to the Complaint" supposed "proprietary and confidential information consisting of (a) the names of each of the end users...(b) the amount of information...purchased for each of [the] end users in a given period of time; (c) the pricing terms on which [they] purchased the [i]nformation and (d) other confidential details regarding the end users..."

7.     Plaintiff expressly disputes that the filing of its Complaint with attachments constitutes a disclosure of Defendants' propriety, confidential information or a trade secret, as defined by the UTSA.   The exhibits are the property of Plaintiff and contain information belonging to Plaintiff.   The filing does not evidence Defendants' terms of sale or pricing matrixes for its end users or sales agents, nor does it disclose the amounts charged Defendants'

3

customers. Rather, the documents attached as exhibits are limited to the terms of the agreement between Plaintiff and Defendants, which includes Plaintiff's pricing terms and invoices reflecting the amounts owed Plaintiff for services it provided to Defendants under the Resale Agreement.

8.      Despite Plaintiff's position as to the propriety of its filing, in an abundance of caution and good faith, Plaintiff contacted counsel for Defendants on December 2, 2010 first by phone and followed by e-mail at 9:59 a.m. EST to both Mr. Paul Maselli and Mr. Ryan Barack. Plaintiff stated that it would agree to file a motion requesting the return of the original unredacted exhibits to its Complaint so that those documents could be replaced with the Redacted Exhibits attached hereto, and asked whether Plaintiff may represent to the Court that Defendants do not oppose its motion.

9.      After failing to receive a response, counsel for Plaintiff again contacted Mr. Maselli and Mr. Barack by e-mail at 5:23 p.m. EST, requesting a response to Plaintiff's inquiry as to whether Defendants would assent to filing the motion unopposed. This correspondence further stated that, if counsel for Plaintiff did not receive a response by 10:00 a.m. the following morning, Plaintiff would file its motion. Counsel for Defendants did not respond.

10.     In a last effort to confer with Defendants' counsel on this matter, counsel for Plaintiff contacted Defendants' counsel, leaving a voicemail with Mr. Masselli and a message with Mr. Barack's assistant. Notwithstanding the fact that neither returned counsel's calls, Mr. Maselli contacted counsel for Plaintiff by e-mail at 11:52 EST on December 3, 2010. Although counsel for Plaintiff again attempted to confer with counsel for Defendants on its request, Defendants' counsel neglected to provide a response stating either that counsel would agree to Plaintiff's filing the motion unopposed, or that counsel opposed Plaintiff's request to remove the

exhibits and replace those documents with redacted versions.  Given the nature of the allegations of Defendants' Counterclaim and Third Party Complaint, Plaintiff anticipated a forthcoming response.

11.    Despite Defendants' non-responsiveness, in an abundance of caution and in good faith, Plaintiff respectfully requests that this Honorable Court enter its order directing the Clerk of Court to return the original unredacted exhibits [Doc. No. 1; A-D] to counsel for Plaintiff, and that those documents be permanently deleted from the Court's file and replaced with the Redacted Exhibits attached hereto, and providing such other and further relief as the Court deems just and proper.

DATED:       December 3, 2010                    **GUNSTER, YOAKLEY & STEWART, P.A.**

By:  _/s/ Katherine M. Herbenick___
David M. Wells
Florida Bar No. 0309291
Katherine M. Herbenick
Florida Bar No. 0058995
Attorneys and Trial Counsel for
Plaintiff Chex Systems, Inc.
Gunster
One Enterprise Center
225 Water Street, Suite 1750
Jacksonville, Florida 32202-5185
Phone| (904) 354-1980
Fax| (904) 354-2170
E-mail| dwells@gunster.com
E-mail| kherbenick@gunster.com

## CERTIFICATE OF CONFERENCE

Pursuant to M.D. Fla. L.R. 3.01(g), Plaintiff's undersigned counsel certifies that counsel for the Plaintiff has discussed the relief sought herein with Paul Maselli, Esq., counsel for Defendants CL Verify, LLC and DP Bureau, LLC, and contacted Ryan Barack, Esq., counsel for Defendants CL Verify, LLC and DP Bureau, LLC to discuss the same; however, counsel for defendants did not provide assent to filing this motion unopposed.

___/s/ Katherine M. Herbenick___
Katherine M. Herbenick

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that true and correct copy of the foregoing was filed with the Clerk of the Court using the CM/ECF system which will send notice of the electronic filing on December 3, 2010 to:

Paul J. Maselli
Maselli Warren, P.C.
600 Alexander Road
Princeton, NJ 08540
609/452-8411
Email: Pmaselli@maselliwarren.com

Ryan D. Barack
Kwall Showers & Barack, P.A.
133 N. Fort Harrison Avenue
Clearwater, FL 33755
727/441-4947
Email: rbarack@ksblaw.com

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

CHEX SYSTEMS, INC.,
a Minnesota corporation,

      Plaintiff,

                                       CASE NO.: 8:10-CV-02465-VMC-MAP

v.

DP BUREAU, LLC, a Florida limited liability
company and CL VERIFY, LLC, a Florida
limited liability company,

      Defendants.

_____

# EXHIBIT A

E·FUNDS™

**Information Resale Agreement**
06/02 Version

This Services Resale Agreement ("Agreement") is entered into as of _1/15/2003_ ("Effective Date") by and between eFunds Corporation, through its wholly-owned subsidiary Chex Systems, Inc. ("eFunds"), and DP Bureau, LLC ("Reseller").

**1. Definitions**
**Confidential Information** means a party's proprietary or confidential information that has been designated as Confidential Information or that, by the nature of the circumstances surrounding the disclosure, ought to, in good faith be treated as confidential or proprietary information. Confidential Information shall not include information that is or becomes publicly known through no wrongful act of the party receiving the information; becomes known without confidential or proprietary restriction from a source other than the disclosing party; can be shown by written records that the recipient possessed the information prior to the disclosure by the disclosing party; or was or is independently developed without use of or reference to Confidential Information from the other party.
**End User** means those customers of Reseller that obtain the Information from Reseller and utilize such Information.
**End User Agreement** means a separate, written agreement between Reseller and End User, specific to the resale of the Information.
**FCRA** means the federal Fair Credit Reporting Act (15 U.S.C. Section 1681, *et seq.*).
**Information** means consumer-specific information consisting of closure and inquiry files related to consumer transaction accounts with financial institutions, and records of returned checks reported by retail merchants.

**2. Services**
eFunds agrees to make available Information to Reseller for resale to End Users. The Information shall be provided by eFunds to Reseller on an on-line, real time basis.

**3. Fees**
Reseller agrees to pay eFunds the applicable fees for the Information as listed in Attachment 1.

**4. FCRA Requirements**
(a) eFunds and Reseller are consumer reporting agencies as defined by the FCRA. Reseller agrees that all Information requested from eFunds will be requested only in strict conformity to the FCRA and other applicable federal or state statutes, and will be provided to End Users only in strict conformity to such laws.

(b) Reseller agrees to identify to eFunds the identity of each End User of the Information and the permissible purpose under Section 604 of the FCRA for which the Information is furnished to the End User. Reseller agrees that, in reselling the Information, it will comply with Section 607(e) of the FCRA with respect to the procurement of consumer reports for resale.
(d) Reseller certifies to eFunds that Reseller has established and complies with reasonable procedures designed to ensure that the Information is used by End Users only for a purpose for which the Information may be furnished under Section 604 of the FCRA.

**5. Specific Use Limitations**
Except as contemplated by this Agreement, Reseller shall not analyze or otherwise use the Information it receives hereunder to familiarize itself with the nature, character, or quality thereof, or use any information it obtains as a result of its handling, processing, or possession of such Information for Reseller's benefit, of for the benefit of any parent, subsidiary, or affiliate of the Reseller, or for the benefit of any third party other than the End User. Reseller further agrees that it shall not use the Information for the following applications: (a) to provide deposit or transaction account opening, monitoring or review services to financial institutions; (b) to provide brokerage account opening, monitoring or review services; (c) for any score, model, or other development work with any party that is not an affiliate of Reseller or eFunds; (d) for any check verification, guarantee, retail point of sale or good funds applications; (e) for any list enhancement or list augmentation services; or (f) for any other purpose not expressly authorized in advance by eFunds.

**6. Delivery of Information**
Reseller agrees that in relaying the Information received from eFunds to End Users, Reseller shall in all instances faithfully transmit such Information in its entirety.

**7. End User Agreement**
Reseller and End User shall execute an End User Agreement prior to Reseller providing Information to End User. Reseller shall not assign an End User Agreement, and shall not consent to an assignment of an End User Agreement by End User without obtaining the written consent of eFunds.

**8. Consumer Disputes**

Reseller agrees to notify eFunds within twenty-four (24) hours of any consumer dispute received by Reseller that relates to the Information. Reseller agrees to cooperate with and assist eFunds in any reinvestigation of disputes involving the Information and to fully and promptly inform eFunds of the results of such reinvestigations.

**9. Taxes**

Reseller shall be responsible for and pay any and all taxes now or hereafter imposed or assessed by any governmental body, agency or tax authority upon this Agreement or on the products, equipment and/or services provided under this Agreement, whether assessed against eFunds or Reseller, including but not limited to sales, use, personal property and any other taxes; excluding however, taxes on or measured by the overall gross or net income of eFunds.

**10. Warranties**

(a) Reseller represents and warrants that: (i) it will not use or retain any Information from eFunds except as contemplated by this Agreement; and (ii) it will not attempt to effectuate a sale to any entity whose purpose for use of the Service is to engage in businesses other than the Pay Day Loan or Check Cashing industries.

(b) Each party represents and warrants that, (i) it has the power to execute, deliver and perform this Agreement; (ii) this Agreement is duly authorized and will not violate any provisions of law; (iii) it has all licenses, if any, required to conduct its business, and is legally qualified to conduct business in every jurisdiction where it does so; and (iv) it will comply with all applicable federal and state laws and regulations.

(c) <u>EXCEPT AS SPECIFICALLY STATED IN THIS SECTION, ALL PRODUCTS AND SERVICES PROVIDED BY EFUNDS ARE "AS IS", AND EFUNDS DISCLAIMS ALL WARRANTIES, WHETHER STATUTORY, EXPRESS OR IMPLIED, INCLUDING, BUT NOT LIMITED TO, ANY WARRANTY OF MERCHANTABILITY OR FITNESS FOR PARTICULAR PURPOSE.</u>

**11. Remedies and Limitations of Liability**

For any breach or default of this Agreement by eFunds, Reseller shall afford eFunds a reasonable amount of time in which to remedy the breach. eFunds' liability under this Agreement is limited, in all cases, in the aggregate, to the amount of fees paid for the applicable product or service during the six (6) month period immediately preceding the event that gave rise to the liability. Each party reserves the right to obtain equitable relief where appropriate. Each party also waives any and all claims for incidental, special, punitive, indirect or consequential damages of any kind.

**12. Indemnification**

(a) Except for any gross negligence or willful misconduct by eFunds, Reseller shall indemnify, defend, and hold eFunds, its directors, officers, employees, subsidiaries, and affiliates, harmless from any and all claims, demands, and causes of action of any kind made against eFunds by any End User for any damages arising out of or related to Resellers agreement with End Users or End User's use of the Information.

(b) Except for any gross negligence or willful misconduct by eFunds, Reseller shall indemnify, defend, and hold eFunds, its directors, officers, employees, subsidiaries, and affiliates, harmless from any and all claims, demands, and causes of action of any kind made against eFunds by any third party for any disclosure of any Information by Reseller or End User.

(c) eFunds shall indemnify, defend, and hold the Reseller, its directors, officers, employees, subsidiaries, and affiliates, harmless from any and all claims, demands, and causes of action of any kind made against Reseller by a third party claiming that any products or services offered under such a Schedule infringes a third party's United States intellectual property right. Should any product or service provided become, or in the opinion of eFunds become likely to become, the subject of a claim of infringement, eFunds may obtain for the Reseller the right to continue to use or replace or modify the products or services to make them non-infringing, at no charge to the Reseller. This subsection contains the entire liability of eFunds for any alleged infringement.

(d) Each party shall promptly notify the other of any claim for which it seeks indemnification; authorize the indemnifying party to defend and to control the defense of the claim, at the indemnifying party's expense; and provide, at no charge to the indemnifying party, all documents, witnesses, and other reasonable assistance that may be necessary to defend against the claim.

**13. Force Majeure**

Neither party shall be liable for any losses or be in breach of its obligations under this Agreement as a consequence of any act or cause that is beyond its reasonable control and without its fault or negligence, provided that reasonable notice is given to the other party of the existence of such act or cause.

**14. Waiver**

The failure of either party to enforce any provision of this Agreement shall not in be construed as a waiver of such provision or impair the right of either party to enforce such provision at a later time.

**15. Confidential Information**

Each party agrees and acknowledges that: (a) during the course of this Agreement, it may learn certain Confidential Information of the other party; (b) Confidential Information shall remain the sole and exclusive property of the disclosing party; (c) Confidential Information is made available to the receiving party on a limited use basis solely for use as required by or set forth in this Agreement; (d) it will not sell, disclose, or otherwise make Confidential Information available, in whole or in part, in a

manner not provided for in this Agreement, without the prior written consent of the other party, except that a party may disclose Confidential Information to its affiliates and independent contractors who have assumed confidentiality obligations in accordance with this Agreement; and (e) it will utilize no less than a reasonable degree of care to prevent disclosure of Confidential Information to any unauthorized person or entity.

## 16. Use and Ownership of Intellectual Property

(a) Any and all Confidential Information, software, data, or other work product provided by eFunds to Reseller, and any derivative works, modifications, adaptations or enhancements therefrom or thereto, shall remain the sole and exclusive property of eFunds and be subject to the terms of any license or other use restrictions contained in this Agreement.

(b) Nothing contained in this Agreement shall be deemed to grant Reseller any license, sublicense, copyright interest, proprietary rights, or other claim against or interest in any intellectual property utilized by eFunds or any third party involved in the delivery of Information to Reseller. Under no circumstances will Reseller attempt in any manner, directly or indirectly, to discover or to reverse engineer any Confidential Information developed or used by eFunds in providing Information to Reseller.

(c) Reseller will not use or permit its employees, agents, and subcontractors to use, the trademarks, service marks, logos, names, or any other of eFunds' or its affiliates' proprietary designations, whether registered or unregistered, without eFunds' prior written consent.

(d) Reseller will not store, copy or reproduce the Information except as is necessary for internal legal compliance purposes, including for reinvestigation of consumer disputes as contemplated by the FCRA and this Agreement.

## 17. Audit

eFunds shall have the right, during the term of this Agreement and for two (2) years thereafter, upon reasonable notice and during normal business hours to determine or to verify the compliance of Reseller with its obligations under this Agreement.

## 18. Termination

This Agreement shall continue for an initial period of two (2) years ("Initial Term"). Thereafter, this Agreement shall automatically renew for successive one (1) year periods ("Renewal Term"). Either eFunds or Reseller may terminate this Agreement at the conclusion of the Initial Term or then current Renewal Term by providing sixty (60) days prior written notice to the other. If either party believes that the other has breached a material obligation contained in this Agreement, the party may terminate this Agreement immediately by providing the other notice of termination. Upon termination, Reseller shall immediately cease all sales efforts with respect to the Information and shall certify in writing to eFunds within ten (10)

business days after termination that it has either destroyed or returned all documentation, in any form and all copies thereof, related to the Information to eFunds.

## 19. Assignment

This Agreement, or any portion thereof, shall not be assigned or transferred by Reseller without eFunds' prior written consent, which will not be unreasonably withheld. Reseller understands that eFunds may obtain products and/or services from third parties to the extent necessary to perform its obligations under this Agreement. In addition, eFunds shall have the right to assign this Agreement to any directly or indirectly held and majority-owned subsidiary of eFunds Corporation, or to any successor in interest in connection with a merger, acquisition, business combination, divestiture, or business reorganization.

## 20. Changes

Changes to this Agreement may only be made in writing and signed by both parties.

## 21. No Export

Reseller agrees that it will not export any of the Information, related documentation or technical data, or any product incorporating the Information, related documentation, or technical data, without the written consent of eFunds.

## 22. Notices

All notices provided for by this Agreement shall be made in writing and sent to the address set forth below, or in accordance with the last written instructions received for such notices. Such notice shall be effective upon receipt. Those notices related to default or termination shall be sent by registered or certified mail.

## 23. Severability

If any provision of this Agreement is held invalid, illegal, or unenforceable, the validity, legality, or enforceability of the remainder of this Agreement shall not in any way be affected.

## 24. Independent Status

Neither party shall be deemed an employee, agent, or partner of the other by reason of this Agreement.

## 25. Governing Law and Disputes

This Agreement shall be governed by the laws of the State of Delaware, without regard to conflict of law provisions.

## 26. Survival

Those provisions of this Agreement that by their terms, nature or sense survive any termination or expiration of this Agreement, including, but not limited to Sections 12., 15., and 16., shall so survive in accordance with their terms.

## 21. Entire Agreement

This Agreement constitutes the entire agreement of the parties with respect to its subject matter and supersedes all existing agreements and other communications, written or oral.

**IN WITNESS WHEREOF**, the parties authorized representatives have executed this Agreement effective as of the Effective Date.

**DP BUREAU, LLC**

BY: _Joseph M. Bartholomew_ _CEO_

TITLE: _CEO_

ADDRESS:     950 Missouri Avenue
                        N. Largo, FL 33770

TITLE: _Lisa M. Nelson_
_Vice President_

ADDRESS:     FEB 1 2 2003
                        Contract Administration
                        400 West River Woods Parkway
                        Milwaukee, WI 53212

APPROVED
AS TO FORM/
CONTRACT ADMIN

**CHEX SYSTEMS, INC.**

BY: _Lisa M. Nelson_

DP Bureau RSI 01-15-02 exec

4



UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

CHEX SYSTEMS, INC.,
a Minnesota corporation,

       Plaintiff,

                                  CASE NO.: 8:10-CV-02465-VMC-MAP

v.

DP BUREAU, LLC, a Florida limited liability
company and CL VERIFY, LLC, a Florida
limited liability company,

       Defendants.

_____

# EXHIBIT B

## AMENDMENT

This is an Amendment to the Information Resale Agreement dated January 15, 2003, as amended (the "Agreement"), between DP Bureau, and its subsidiary, CL Verify, LLC, 3030 North Rocky Point Drive, Suite 670, Tampa, Florida 33607 ("Reseller") and Chex Systems, Inc. ("Chex"), and shall be effective as of the last date of execution hereof. The parties acknowledge that some of the provisions of this Amendment may be duplicative of certain provisions contained in the Agreement, or a previous amendment thereto and that the terms of this Amendment shall be incorporated by this reference into the Agreement. If any term or provision in this Amendment conflicts with any term or provision of the Agreement or a previous amendment, the terms and provisions of this Amendment shall control and supersede such conflicting term or provision.

In addition to the duties and obligations specified in the Agreement and any amendment pertaining to Reseller's ability to access, use and resell the Information, Reseller hereby agrees to the following additional terms and provisions:

1. Reseller and Chex shall implement an interim solution for the access, use and resale of the Information ("Interim Solution") by April 30, 2009. The Interim Solution shall include a code change to Reseller's system such that if the Chex connection is not available and an inquiry is submitted to the Reseller by an End User, Chex data on the subject consumer that was cached within the same day (12:00am to 11:59pm) of the inquiry, if any, can be returned to the inquiring End User. During any period when the Chex connection is not available, Reseller will ensure that each transaction that accessed cached data is identified for re-processing, irrespective of whether any data exists on the subject consumer in Reseller's cached data file. Once the Chex connection is re-established, Reseller shall submit all of these unique consumer inquiries to Chex via a batch basis. These transactions will be sent to Chex for processing within 12 hours of receipt. Reseller will work towards submitting all of these unique consumer inquiries via an online real time basis at a rate of no more than 5 transactions per second, until the processing is completed during normal business hours.

2. The Reseller acknowledges that the Interim Solution is a temporary measure that is not intended to extend beyond April 30, 2010.

3. Reseller and Chex shall implement a long-term solution ("Long-Term Solution") by May 1, 2010 that will reasonably address the limitation of scheduled maintenance planned outages and increase system availability to 99.95%. Progress on this commitment will be delivered quarterly via a business review meeting between technology executives representing both Reseller and Chex.

4. Reseller's will use its best commercially reasonable efforts to assist Chex in updating any consumer reports that may not reflect the correct number of inquiries, as a result of Reseller's use of cached data. This obligation shall survive the termination of any relevant agreement between the parties.

5. Except as amended herein, all other terms and conditions of the Agreement shall remain in full force and effect. The individuals executing this Amendment on behalf of the parties represent and warrant that they are duly authorized to execute this Amendment on behalf of their respective principals.

6. In the event that Reseller (i) is not operating under the Interim Solution by April 30, 2009, or (ii) does not adhere to the Interim Solution in all material respects after such date, Chex shall have the right to immediately terminate the Agreement .



1                                   CONFIDENTIAL INFORMATION

DP BUREAU, LLC

By: _____

Name: KIM ANDERSON
      (Print Name)

Title: CEO, CLVEREFY, LLC

Date: 4-30-09


CHEX SYSTEMS, INC.

By: _____

Name: Kay Nichols
      (Print Name)

Title: EVP

Date: 4-30-09


2                    CONFIDENTIAL INFORMATION

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

CHEX SYSTEMS, INC.,
a Minnesota corporation,

       Plaintiff,

                                    CASE NO.: 8:10-CV-02465-VMC-MAP

v.

DP BUREAU, LLC, a Florida limited liability
company and CL VERIFY, LLC, a Florida
limited liability company,

       Defendants.

_____

# EXHIBIT C



e · F U N D S

# AMENDMENT 2

This is an Amendment to the Resale of Information Agreement dated January 15, 2003 between DP Bureau, LLC. ("Reseller") and Chex Systems, Inc., a wholly-owned subsidiary of eFunds Corporation, Gainey Center II Suite 300, 8501 North Scottsdale Road, Scottsdale, Arizona 85253 ("eFunds"), as amended, and shall be effective as of the date of execution.

1.   The following shall be added to the Agreement as Section 28:

   *28.  Data Contribution & Rules of Participation*

   *(a) Reseller shall contribute data to eFunds on behalf of End User, including: (i) certain information from unpaid checks written at End User's point of sale for merchandise purchased or services received, which have been returned to End User or Reseller; and (ii) payment information, information deletes, modifications, and other updates to information with respect to checks which have previously been contributed to eFunds as set forth in the Rules of Participation. In contributing data, Reseller represents and warrants that it will comply with the Rules of Participation applicable to Reseller in its processing on behalf of End User. Reseller further agrees to provide the Rules of Participation to each End User contributing data and to contract with End User to require compliance with the Rules of Participation. For each End User contributing data, Reseller shall obtain from such End User prior written consent to data contribution, and shall provide such written consent to eFunds.*

2.   The following shall be added to the Agreement as Section 29:

   *29.  eFunds Use of Information*

   *(a) Reseller agrees, and shall cause End User to agree that, notwithstanding any provision of this Agreement to the contrary, eFunds may store, disclose, and use information obtained by eFunds under this Agreement to the extent and only in such manner that such storage, disclosure, and use shall be for purposes of performing the obligations of eFunds under this Agreement or for purposes permitted under federal, state, or local statutes, regulations, and requirements applicable to eFunds, including but not limited to the FCRA, the GLBA, their implementing regulations, and this subsection. eFunds shall not compile, or rent or sell to others, any lists containing NPPI to be used for direct marketing purposes.*

   *(b) NPPI about Reseller's or End User's consumer customers which is disclosed to eFunds as part of a consumer report or for fraud prevention purposes may be used by eFunds for consumer reporting purposes governed by the Fair Credit Reporting Act, for fraud prevention purposes, or other allowable purposes, pursuant to the GLBA.*

   *(c) Reseller may Termination of this Agreement shall not require eFunds to remove or cease to use any information contributed by Reseller prior to the date of termination except as may be required by the FCRA or GLBA..*





5.   Attachment 1 shall hereby be amended to include the following:

> *During the term of this Agreement eFunds agrees that it shall not knowingly and intentionally solicit business from prospective customers for use in underwriting, marketing or servicing of deferred-presentment transactions or loans when such business would include the provision of Reseller's data without the prior written consent of Reseller.*

6.   Except as amended herein, all other terms and conditions of the Agreement shall remain in full force and effect. The individuals executing this Amendment on behalf of the parties represent and warrant that they are duly authorized to execute this Amendment on behalf of their respective principals.

**DP BUREAU, LLC**                                   **CHEX SYSTEMS, INC.**

By: _O Reynolds_                                     By: _Weston Roman_

Name: _GRADY REYNOLDS_                                Name: _____
      (Print Name)                                         (Print Name)

Title: _MANAGER_                                     Title: _____

Date: _1/21/5_                                       Date: _____

APPROVED
AS TO FORM
CONTRACT

E·FUNDS

| | **SCAN Rules of Participation** |
| --- | --- |
| | 08/04 Reseller Version |

The SCAN contributing member ("Member") agrees to the following Rules of Participation governing contribution of check to eFunds through its wholly-owned subsidiary Deposit Payment Protection Services, Inc. ("eFunds").

**1.  Eligible Checks for Contribution**

(a)    Member agrees to contribute to eFunds certain unpaid checks written at the point of sale for merchandise purchased or services received, which have been returned to Member by its financial institution(s). The following types of returned unpaid checks may be contributed to SCAN, with the following conditions and exceptions:

"NSF" CHECKS – Member must indicate number of submissions for payment made prior to the contribution of the check.

"ACCOUNT CLOSED" CHECKS
"REFER TO MAKER" CHECKS
"THIRD PARTY PAYROLL" CHECKS
"OTHER" CHECKS – Checks returned for reasons not defined above and evidence of fraud or abuse is available.

(b)    Notwithstanding the provisions of Section 1(a) The Member agrees not to contribute any of the following information to SCAN.

i.    Checks returned for reasons other than described in Section 1(a) (e.g., Stop Payment, no signature, no endorsement, financial institution errors).

ii.   Non-check information.  (e.g., returned check fees or charges)

iii.  Non-point-of-sale checks.    (e.g., payments on proprietary credit card debts)

iv.    Checks which are sold or that are NOT the property of Member, or checks for which full rights and title are transferred to another party.  (This does not include checks assigned to agencies for collection)

v.    Checks where the check date is 90 days or more prior to the date of contribution to SCAN

vi.    Information which the consumer disputes as inaccurate or incomplete

vii.  Any information that Member knows is inaccurate

**2.   Contributing Unpaid Check Information to SCAN**

For checks which have met the criteria in Section 1, Member agrees to contribute, via a eFunds Certified System, the following specified information:

(a)    The Member is required to include the following information fields when contributing check data to SCAN:

i.    Full check account number - Transit Routing Number (ABA), and Financial Institution Account Number (DDA).

ii.    Check number as defined in the applicable eFunds Certified System procedures.

iii.  Dollar amount of the check
iv.  Name of check writer
v.    Financial institution's return reason code – NSF, Account Closed, Refer to Maker, Other
vi.  Date of the check
vii.  Drivers license or other state issued identification number - provided Member's point-of-sale procedures include verification of the drivers license or other state issued identification number at the point of sale and the number is available and is clearly legible.
viii. State of issue of Drivers License or identification - if the Drivers License or other state issued identification number is entered.
ix.  eFunds assigned SCAN merchant designator - identifier of storefront where the check was accepted.
x.    SCAN location identification number - as assigned by SCAN.

(b)    When a specific required field of information is unavailable or illegible, Member will comply with the SCAN Certified System procedures.

(c)   The following optional information may be included with Member's contribution to SCAN, unless prohibited by law:
i.    Name of payor
ii.   Name of the payee, if it is a third party check
iii.  Address
iv.  Telephone number – must include area code



v.    Authorization code/number
vi.   Member employee or associate number
vii.  Member department number
viii. Response code
ix.   Override code
x.    Other - with prior agreement with SCAN

### 3.   File Maintenance and Update

For checks which have previously been contributed to SCAN, Member shall update the information, via a eFunds Certified System to reflect payments, to initiate Deletes, modifications or other updates on checks. Specific requirements are as follows:

(a)   Full payment of the face value of the check must be submitted to SCAN by Member no later than two Business Days after Member or their assigned primary collection agency has received advice of payment.

(b)   Full payment of the face value of the check must be submitted to SCAN by Member no later than ten Business Days after the secondary collection agency has received payment.

(c)   If checks contributed to SCAN are sold and no longer the property of Member, Member shall initiate a Delete for all such items to SCAN prior to sale.

(d)   If an Account Closed item is reported paid and Member determines that the account is actually open, Member will report the new account status to SCAN. eFunds may retain Account Closed status on SCAN after the payment is reported to SCAN until eFunds has been notified by Member or the financial institution that the account has been reopened.

(e)   If Member becomes aware that a consumer's account number has been reissued by the financial institution to another party and the check data on SCAN relates to the previous holder of the account, Member shall initiate a Delete of the data from SCAN. In the event that eFunds becomes aware that an account number that is currently resident on SCAN has been reissued to another consumer by a financial institution, eFunds may Delete the previous account holder's information from SCAN.

(f)   In the event a check, which had been previously entered into SCAN, is discharged in a bankruptcy petition/filing, Member shall forward Discharge of Debtor Notice to eFunds, or Delete from SCAN any and all checks included in the bankruptcy discharge. When notification has been received, eFunds will update the Master Check File, and inform the consumer upon inquiry that said record has been recorded in a bankruptcy filing.

(g)   In the event that a consumer notifies eFunds that the consumer's checks have been stolen and has provided satisfactory documentation (e.g., Affidavit of Forgery/ Police

Report), eFunds may update or Delete the check information on SCAN. If the consumer notifies Member that their checks have been stolen and has provided satisfactory documentation, Member will send SCAN an update or Delete for the check information and refer the consumer to eFunds.

### 4.   Definitions

*Delete:* The process by which SCAN removes records from the applicable Member SCAN Negative Files.

*eFunds Certified System:* A system that has passed the eFunds certification process for contributing information to SCAN.

*Master Check File:* This file contains all of the information contributed to SCAN. The file is maintained by eFunds.

*Member SCAN Negative File:* This file is the net summation of all of Member SCAN Negative File Updates.

*SCAN Negative File Update:* A periodic posting file of new record adds, changes and Deletes delivered by SCAN to be applied to Member SCAN Negative file.

*SCAN Consumer Referral Slip:* eFunds standard adverse action form.

*Business Day:* Monday through Friday, exclusive of the following National Holidays:

       New Years Day
       Memorial Day
       Fourth of July
       Labor Day
       Thanksgiving
       Christmas Day

### 5.   Member Use of Third Party and Agency Services

(a)   Member shall be responsible for insuring that any agency or third party it engages to perform any data entry, data processing or other item of service for Member in connection with SCAN complies with these Rules of Participation when performing such services.

(b)   Member is responsible for insuring that any third party used by Member in connection with SCAN has been certified by eFunds.

### 6.   Enforcement

(a)   eFunds may exclude or Delete data from SCAN when it has been determined by eFunds to be in the best interest of the Membership at large.

(b)   Violation of any of these requirements may result in the suspension or removal of the Member's data from SCAN and/or cancellation of service by eFunds, at eFunds discretion. eFunds agrees to provide Member with fourteen days advance notice prior to any such cancellation of service.

(c)   eFunds may perform periodic audits of Member's compliance to these Rules of Participation during Member's normal business hours and with the reasonable cooperation of Member

### 7.   Updating the Members SCAN Negative File

(a) Member will verify each and every Business Day that Member SCAN Negative File has been updated. Member agrees to notify eFunds within one Business Day of any unsuccessful SCAN Negative File Update.

(b) At the request of eFunds, Member will cease utilization of Member SCAN Negative File if the delay of the update process lasts for more than three Business Days.

(c) eFunds agrees to update the Master Check File each Business Day. If eFunds is unable to update the Master Check File for a period longer than three Business Days, eFunds has the right to require Member to cease utilization of Member SCAN Negative File.

**8. Certification and Authorized use of SCAN Information**
Member hereby certifies to eFunds that Member and all of its store locations and affiliated companies (collectively, the "Related Members") authorized by eFunds to access all or any portion of the SCAN file:

(a) Will, pursuant to Section 604(a)(3)(F) of the federal Fair Credit Reporting Act ("FCRA"), obtain and use SCAN consumer reports only for the permissible purpose of check verification in connection with a business transaction initiated by the consumer and for no other purposes; and

(b) Is in receipt of a copy of the Notice to Users of Consumer Reports: Obligations of Users Under the FCRA and Notices to Furnishers of Information: Obligations of Furnishers Under the FCRA prescribed by the Federal Trade Commission and required to be provided by eFunds to Member pursuant to Section 607(d) of the FCRA.

Member further certifies to eFunds that it has the power and authority to sign these Rules of Participation on its own behalf and on behalf of the Related Members and by Member signing below, each Related Member has adopted the above certification and these Rules of Participation as if separately signed by each such Related Member.

**9. Authentication of Consumer Identity at the Point of Sale**
Member shall accurately determine and validate the consumer identification in order to access to SCAN at the point of sale.

(a) Drivers license number or other state issued identification number: The Member must verify and enter the entire drivers license or other state issued identification number, including any alphanumeric and nonnumeric characters present in the number and the state of issue.

(b) MICR account number: The Member must verify and enter the full account number against the SCAN file, including the ABA and the DDA.

(c) Any other point-of-sale procedures for accessing SCAN must be approved in advance by eFunds

**10. Member Notices to Consumer**
(a) If Member declines a consumer's check based in whole or in part on the SCAN file data, then Member shall provide consumer the notice of adverse action required by law using the SCAN Consumer Referral Slip or otherwise suitable alternative.

(b) Member shall provide to eFunds the Member's address and phone numbers to be used by eFunds for consumer referral and for dispute resolution. Member shall notify eFunds of any changes in that information.

**11. Consumer Dispute Reinvestigation**
In most cases, consumers have no dispute with the accuracy or completeness of information contributed by Members to SCAN. However, consumers do periodically notify eFunds of such a dispute. When such a dispute notification occurs, both eFunds and the SCAN Membership wish to reinvestigate the matter promptly in order to maintain good consumer relations, as well as to comply with their respective responsibilities under applicable laws. Specific reinvestigation responsibilities include the following:

(a) When eFunds receives notice of a dispute directly from a consumer regarding information in their SCAN file, eFunds will request relevant information from the consumer and track the dispute in its systems.

(b) For some disputes, eFunds may reinvestigate the dispute and resolve it by Deleting the disputed information on an expedited basis (e.g., by calling the bank to verify that a checking account reported to eFunds as "closed" is actually open).

(c) If eFunds does not perform an expedited dispute resolution, eFunds will contact the party who contributed the data in question, and will provide all relevant information which eFunds has received regarding the consumer's dispute. eFunds may also request specific assistance in the dispute reinvestigation.

(d) When contacted by eFunds, Member will conduct an investigation with respect to the disputed information, review all relevant information provided by eFunds related to the matter, and report the results of the investigation to eFunds. Additionally, if Member's investigation finds that the disputed information is incomplete or inaccurate, Member will report those results to all other consumer reporting agencies to which Member may have previously furnished the information. Member will complete these actions in a reasonable and timely basis, but no later than 25 days after the date on which the consumer notified eFunds of the dispute (or such earlier time as may be required by law).

(e) When the reinvestigation has been completed, eFunds will update the SCAN information as required, and will provide the required notices to the consumer.

**12. Reinserting Data Which Was Previously Deleted from SCAN as a Result of a Dispute Reinvestigation**



Various laws restrict reinserting information which the consumer disputed directly with eFunds, and which was Deleted after a reinvestigation. Such reinsertions to SCAN are expected to be very infrequent. The following requirements will apply:

(a) All such reinsertions will be performed by eFunds. Members shall not recontribute any information which was Deleted from SCAN by Member or eFunds as the result of a reinvestigation of disputed information as described in Section VIII. A.

(b) If Member believes that the Deleted disputed information is accurate and complete, Member must conduct a reinvestigation. If the results of the reinvestigation confirm that the information is accurate and complete, Member must certify this in writing on the form provided by eFunds to Member, and provide the underlying documentation.

(c) eFunds will evaluate the certification and documentation. Based upon its evaluation, eFunds may elect to make the reinsertion. If the information is reinserted by eFunds, it will notify the consumer of the reinsertion. If eFunds does not reinsert the information, it will notify Member.

### 13. Consumer Disputes

(a) When a consumer directly notifies Member about a dispute with information which Member has already reported to eFunds, Member will promptly provide to eFunds whatever corrections are necessary to make the information complete and accurate, by initiating a Delete or update to SCAN.

(b) If Member is notified by the consumer about a dispute, but Member needs to conduct an investigation which will require some time to complete (and therefore Member cannot yet provide the prompt corrections as described above), Member will contact eFunds regarding the dispute.

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

CHEX SYSTEMS, INC.,
a Minnesota corporation,

      Plaintiff,

                                   CASE NO.: 8:10-CV-02465-VMC-MAP

v.

DP BUREAU, LLC, a Florida limited liability
company and CL VERIFY, LLC, a Florida
limited liability company,

      Defendants.

_____

# EXHIBIT D

Chex Systems. Inc.
Penley, Inc.
Dept. 2634
Los Angeles, CA 90084-2634



Billing Inquiries: 1-800-207-2742
Company Code: 902

- DUPLICATE -

CL VERIFY, LLC
ACCOUNTS PAYABLE
3030 N ROCKY POINT DR
STE 670
TAMPA FL 33607-5801
USA



| For the Service Month of July 2010 | | |
|---|---|---|
| Invoice Date: | 08/04/2010 | |
| Invoice Number: | 1001294055 | |
| Customer Number: | 1613938 | |

| | | |
|---|---|---|
| Subtotal of Services: | $ 379,981.97 | |
| Tax: | $ 5,392.65 | |
| Invoice Total in USD: | $ 385,374.62 | |
| Payment Terms: | Net 30 days | |

Thank you for choosing FIS as your product and service provider. We
value your business and look forward to assisting with all your needs
now and in the future.

The billing migration continues to progress with the first consolidated
invoice scheduled for July service month. Please note; this is one
month later than originally communicated.

The services depicted on this invoice are exclusively provided by Chex Systems, Inc. and/or Penley, Inc.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

PLEASE DETACH AND REMIT WITH YOUR PAYMENT



Chex Systems, Inc.
Penley, Inc.
Dept. 2634
Los Angeles, CA 90084-2634

CL VERIFY, LLC
ACCOUNTS PAYABLE
3030 N ROCKY POINT DR
TAMPA FL 33607-5801
USA

| Customer Number: |
|---|
| 1613938 |
| **Invoice Number:** |
| 1001294055 |
| **Invoice Date:** |
| 08/04/2010 |
| **Amount Due:** |
| $ 385,374.62 |
| **Amount Enclosed:** |

1001 1001294055 902  1613938    5 0038537462 9



- DUPLICATE -

| Billing Inquiries: | 1-800-207-2742 | Invoice Number: | 1001294055 |
| Customer: | 1613038 | Invoice Date: | 08/04/2010 |
| Customer Name: | CL VERIFY, LLC | Service Month: | July 2010 |

| DESCRIPTION | UNITS | RATE | AMOUNT |
| --- | --- | --- | --- |

-- DUPLICATE --

# FIS

## Summary Details

Billing Inquiries: 1-800-207-2742
Customer:                1613938
Customer Name: CL VERIFY, LLC

Invoice Number:     1001294055
Invoice Date:         08/04/2010
Service Month:        July 2010

| Customer # | Location Name | Location Number | Charges | Sales Tax | Total |
|---|---|---|---|---|---|



-- DUPLICATE --

## Supporting Details

Billing Inquiries: 1-800-207-2742
Customer: 1613938
Customer Name: CL VERIFY, LLC

Invoice Number: 1001294055
Invoice Date: 08/04/2010
Service Month: July 2010

| Customer # | Location Name | Location Number | Charges | Sales Tax | Total |
|---|---|---|---|---|---|



-- DUPLICATE --

## Supporting Details

Billing Inquiries: 1-800-207-2742
Customer:            1613938
Customer Name: CL VERIFY, LLC

Invoice Number:      1001294055
Invoice Date:        08/04/2010
Service Month:       July 2010

| Customer # | Location Name | Location Number | Charges | Sales Tax | Total |
| --- | --- | --- | --- | --- | --- |

-- DUPLICATE --



## Supporting Details

Billing Inquiries: 1-800-207-2742
Customer:               1613938
Customer Name: CL VERIFY, LLC

Invoice Number:     1001294055
Invoice Date:       08/04/2010
Service Month:      July 2010

| Customer # | Location Name | Location Number | Charges | Sales Tax | Total |
|---|---|---|---|---|---|



Chex Systems, Inc.
Penley, Inc.
Dept. 2634
Los Angeles, CA 90084-2634

- DUPLICATE -

Billing Inquiries: 1-800-207-2742
Company Code: 902

CL VERIFY, LLC
ACCOUNTS PAYABLE
3030 N ROCKY POINT DR
STE 670
TAMPA FL 33607-5801
USA



INVOICE

| For the Service Month of August 2010 | | Subtotal of Services: | $ 388,995.04 |
|---|---|---|---|
| | | Tax: | $ 4,728.44 |
| Invoice Date: | 09/03/2010 | Invoice Total in USD: | $ 393,723.48 |
| Invoice Number: | 1001308597 | Payment Terms: | Net 30 days |
| Customer Number: | 1613938 | | |

Thank you for choosing FIS as your product and service provider. We
value your business and look forward to assisting with all your needs
now and in the future.

The billing migration continues to progress with the first consolidated
invoice scheduled for July service month. Please note: this is one
month later than originally communicated.

The services depicted on this invoice are exclusively provided by Chex Systems, Inc. and/or Penley, Inc.

PLEASE DETACH AND REMIT WITH YOUR PAYMENT



Chex Systems, Inc.
Penley, Inc.
Dept. 2634
Los Angeles, CA 90084-2634

CL VERIFY, LLC
ACCOUNTS PAYABLE
3030 N ROCKY POINT DR
TAMPA FL 33607-5801
USA

| Customer Number: |
|---|
| 1613938 |
| Invoice Number: |
| 1001308597 |
| Invoice Date: |
| 09/03/2010 |
| Amount Due: |
| $ 393,723.48 |
| Amount Enclosed: |

1001 1001308597 902  1613938    5 0039372348 6



- DUPLICATE -

| Billing Inquiries: | 1-800-207-2742 | Invoice Number: | 1001308597 |
| Customer: | 1613938 | Invoice Date: | 09/03/2010 |
| Customer Name: | CL VERIFY, LLC | Service Month: | August 2010 |



| DESCRIPTION | UNITS | RATE | AMOUNT |
|---|---|---|---|

-- DUPLICATE --

# FIS

## Summary Details

Billing Inquiries: 1-800-207-2742
Customer:               1613938
Customer Name: CL VERIFY, LLC

Invoice Number:     1001308597
Invoice Date:       09/03/2010
Service Month:      August 2010

| Customer # | Location Name | Location Number | Charges | Sales Tax | Total |
|---|---|---|---|---|---|

-- DUPLICATE --

# FIS

## Supporting Details

Billing Inquiries: 1-800-207-2742
Customer:                    1613938
Customer Name: CL VERIFY, LLC

Invoice Number:      1001308597
Invoice Date:          09/03/2010
Service Month:        August 2010

| Customer # | Location Name | Location Number | Charges | Sales Tax | Total |
|---|---|---|---|---|---|

-- DUPLICATE --

# FIS

## Supporting Details

Billing Inquiries: 1-800-207-2742
Customer:          1613938
Customer Name: CL VERIFY, LLC

| | |
|---|---|
| Invoice Number: | 1001308597 |
| Invoice Date: | 09/03/2010 |
| Service Month: | August 2010 |

| Customer # | Location Name | Location Number | Charges | Sales Tax | Total |
|---|---|---|---|---|---|



-- DUPLICATE --

## Supporting Details

Billing Inquiries: 1-800-207-2742
Customer:          1613938
Customer Name: CL VERIFY, LLC

Invoice Number:    1001308597
Invoice Date:      09/03/2010
Service Month:     August 2010

| Customer # | Location Name | Location Number | Charges | Sales Tax | Total |
|---|---|---|---|---|---|

Chex Systems, Inc.
Penley, Inc.
Dept. 2634 .
Los Angeles, CA 90084-2634



Billing Inquiries:  1-800-207-2742
Company Code: 902

CL VERIFY, LLC
ACCOUNTS PAYABLE
3030 N ROCKY POINT DR
STE 670
TAMPA FL  33607-5801
USA

# INVOICE

| For the Service Month of September 2010 | | |
|---|---|---|
| Invoice Date: | 10/19/2010 | |
| Invoice Number: | 1001323520 | |
| Customer Number: | 1613938 | |

| Subtotal of Services: | $ 145,739.24 |
|---|---|
| Tax: | $ 0.00 |
| Invoice Total in USD: | $ 145,739.24 |
| Payment Terms: | Net 30 days |

Thank you for choosing FIS as your product and service provider.  We
value your business and look forward to assisting with all your needs
now and in the future.

Please take note of the following Transaction description change
From:  QUALIFILE PREMIER CUSTOM CREDIT BUREAU
To:  QUALIFILE PREMIER USE OF OWN CRDT BUREAU

The services depicted on this invoice are exclusively provided by Chex Systems, Inc. and/or Penley, Inc.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

PLEASE DETACH AND REMIT WITH YOUR PAYMENT



Chex Systems, Inc.
Penley, Inc.
Dept. 2634
Los Angeles, CA 90084-2634

CL VERIFY, LLC
ACCOUNTS PAYABLE
3030 N ROCKY POINT DR
TAMPA FL  33607-5801
USA

| Customer Number: |
|---|
| 1613938 |
| **Invoice Number:** |
| 1001323520 |
| **Invoice Date:** |
| 10/19/2010 |
| **Amount Due:** |
| $ 145,739.24 |
| **Amount Enclosed:** |

1001  1001323520 902   1613938     5  0014573924  4



| Billing Inquiries: | 1-800-207-2742 | | | Invoice Number: | 1001323520 |
| Customer: | 1613938 | | | Invoice Date: | 10/19/2010 |
| Customer Name: | CL VERIFY, LLC | | | Service Month: | September 2010 |



| DESCRIPTION | | UNITS | RATE | AMOUNT |



**Summary Details**

| Billing Inquiries: | 1-800-207-2742 | | Invoice Number: | 1001323520 |
| Customer: | 1613938 | | Invoice Date: | 10/19/2010 |
| Customer Name: | CL VERIFY, LLC | | Service Month: | September 2010 |

| Customer # | Location Name | Location Number | Charges | Sales Tax | Total |
|---|---|---|---|---|---|



Billing Inquiries: 1-800-207-2742
Customer: 1613938
Customer Name: CL VERIFY, LLC

**Supporting Details**

Invoice Number: 1001323520
Invoice Date: 10/19/2010
Service Month: September 2010

| Customer # | Location Name | Location Number | Charges | Sales Tax | Total |
| --- | --- | --- | --- | --- | --- |



**Supporting Details**

Billing Inquiries:  1-800-207-2742
Customer:  1613938
Customer Name:  CL VERIFY, LLC

Invoice Number:  1001323520
Invoice Date:  10/19/2010
Service Month:  September 2010

| Customer # | Location Name | Location Number | Charges | Sales Tax | Total |
|---|---|---|---|---|---|



**Supporting Details**

| Billing Inquiries: | 1-800-207-2742 |
| Customer: | 1613938 |
| Customer Name: | CL VERIFY, LLC |

| Invoice Number: | 1001323520 |
| Invoice Date: | 10/19/2010 |
| Service Month: | September 2010 |

| Customer # | Location Name | Location Number | Charges | Sales Tax | Total |
| --- | --- | --- | --- | --- | --- |