**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**TAMPA DIVISION**

CHEX SYSTEMS, INC., a
Minnesota corporation,

      Plaintiff

v.

DP BUREAU, LLC, a Florida limited
liability company and CL VERIFY, LLC,
a Florida limited liability company,

                                Case No. 8:10-cv-02465-VMC-MAP

      Defendants.

_____/      **DISPOSITIVE MOTION**

CL VERIFY, LLC,

      Counterclaim Plaintiff,

vs.

CHEX SYSTEMS, INC.,

      Counterclaim Defendant.

_____/

CL VERIFY, LLC,

      Third-Party Plaintiff,

vs.

GUNSTER, YOAKLEY & STEWART, P.A.,
DAVID M. WELLS, MARTIN ROMAIN,
AND MARK O. WILHELM, II,

      Third-Party Defendants.

_____/

**MOTION TO DISMISS CL VERIFY, LLC'S**
**COUNTERCLAIM AGAINST CHEX SYSTEMS, INC.**

Counterclaim Defendant Chex Systems, Inc. ("Chex"), by and through undersigned counsel, and pursuant to Rule 12(b)(6), Federal Rules of Civil Procedure, moves this Court to dismiss all counts of the four-count Counterclaim filed by Counterclaim Plaintiff CL Verify, LLC ("CLV"), for failure to state a claim upon which relief can be granted.  Chex further moves pursuant to Rule 17(a), Federal Rules of Civil Procedure, to dismiss the Counterclaim in its entirety on the basis that CLV lacks capacity to sue and is not the real party in interest. In support, Chex states as follows:

## I.   INTRODUCTION AND PROCEDURAL HISTORY

On November 4, 2010, Plaintiff Chex Systems, Inc. ("Chex") filed suit against CLV and its codefendant, DP Bureau, LLC ("DP Bureau").  [Dkt. 1 (the "Complaint")]

Chex is a consumer reporting agency which collects consumer credit-related information (the "Consumer Credit Data").  [Complaint, ¶ 6]  Chex contracts with, and sells its Consumer Credit Data to, intermediate distributers ("Resellers"), who, in turn, resell Chex's Consumer Credit Data to third-party end users ("End Users").  [Complaint, ¶ 9] Chex entered into such a resale agreement with CLV, a Reseller (the "Resale Agreement"). [Complaint, ¶ 10]

In Count III of the Complaint, Chex asserts a claim against CLV for breach of the Resale Agreement based on CLV's failure to pay outstanding invoices for Chex's Consumer Credit Data resold by CLV to its End Users for the period of August through October 2010. [Complaint, ¶¶ 30-38][1]  In support of its claim in Count III, Chex alleges that CLV:  "failed

_____

[1]   A district court may take judicial notice of certain facts without converting a motion to dismiss into a motion for summary judgment.  *Horne v. Potter*, 2010 WL 3245149, *2 (11th Cir. 2010) (citing *Bryant v. Avado Brands, Inc.*, 187 F.3d 1271, 1278 (11th Cir.

to make payment on outstanding invoices due Chex for its furnishing of certain confidential and proprietary information to [CLV] for resale, as required under . . . the Resale Agreement . . . .  Copies of the invoices are attached as composite Exhibit D."  [Complaint, ¶ 14] Exhibit D to the Complaint (hereafter, the "Invoice Exhibit") includes invoices which list the names of CLV's End Users to whom CLV resold Chex's Consumer Credit Data, and the amount of fees owed by CLV to Chex for those resales.  [Doc. 1, pp. 26-44]

On November 29, 2010, CLV and DP Bureau filed their Answer and Affirmative Defenses to Chex's Complaint.  [Doc 9]  As part of that pleading, CLV filed a Counterclaim against Chex [Doc. 9, pp. 4-9 (the "Counterclaim")] and a third party complaint against Chex's counsel and certain of its officers and employees [Doc. 9, pp. 9-13 (the "Third Party Complaint" or "TPC")].[2]  While the Counterclaim makes repeated references to CLV's alleged "subsidiary," CL Verify Credit Solutions, LLC ("Solutions"), only CLV purports to allege claims against Chex in the Counterclaim.

---

1999)).  Here, the Court may take judicial notice of the allegations of Chex's Complaint to the extent that they relate to the Invoice Exhibit as referenced and relied upon in CLV's Counterclaim, and the contents of the Invoice Exhibit itself, because:  (i) the Complaint and the Invoice Exhibit are contained in the Court's own records; (ii) CLV refers to and relies upon the Invoice Exhibit as a basis for its claims; and (iii) the allegations in the Complaint and the contents of the Invoice Exhibit are not subject to reasonable dispute and are capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned, i.e., the Court's docket.  *Id.* (citing Fed. R. Evid. 201(b)); *see also Brooks v. Blue Cross & Blue Shield of Fla., Inc.*, 116 F.3d 1364, 1369 (11th Cir. 1997) ("where the plaintiff refers to certain documents in the complaint and those documents are central to the plaintiff's claim, then the Court may consider the documents part of the pleadings for purposes of Rule 12(b)(6) dismissal"); *Opteum Fin. Svcs., LLC v. Kolbe*, 2010 WL 3766470, *2 (M.D.Fla. 2010) ("The Court may take judicial notice of the Court's own records.").

[2] Undersigned counsel also represents the third party defendants in this suit and has filed on their behalf, contemporaneously with this motion, a separate motion to dismiss the Third-Party Complaint.

The sole alleged wrongful act upon which CLV bases Counts II through IV of its Counterclaim against Chex is its allegation that the Invoice Exhibit contained proprietary and confidential information relating to the End Users, and that by publishing that information through the filing of the Invoice Exhibit as an exhibit to the Complaint, CLV was purportedly harmed.  [Counterclaim, ¶ 29]

Count I of the Counterclaim alleges that Chex breached a contract between Chex and MicroBilt Corporation ("MicroBilt"), and thereby harmed CLV as a third party beneficiary to the Chex/Microbilt contract.  [Counterclaim, ¶¶ 30-32]  Count II alleges that Chex tortiously interfered with CLV's business relations with DP Bureau, and with CLV's End Users, by attaching the Invoice Exhibit to Chex's Complaint.  [Counterclaim, ¶¶ 33-37]  Count III alleges that Chex violated Florida's Uniform Trade Secrets Act ("FUTSA") by attaching the Invoice Exhibit to Chex's Complaint.  Count IV alleges that Chex willfully and maliciously violated FUTSA by attaching the Invoice Exhibit to Chex's Complaint.  [Counterclaim, ¶¶ 38-42]

As discussed herein below, there are five reasons why CLV's Counterclaim should be dismissed in its entirety or in part:

(A)     CLV alleges that it merged with a non-party entity prior to the event which gave rise to its claims in the Counterclaim, the legal effect of which is that CLV lacks capacity to sue and is not the real party in interest;

(B)     because the Invoice Exhibit is part of the pleadings in this suit, liability for filing the Invoice Exhibit is barred by the absolute immunity afforded by Florida's litigation privilege;

(C)     Counts II through IV of CLV's Counterclaim rely upon impermissible "shotgun-pleading";

(D)     Count I of the Counterclaim fails to adequately allege the essential elements of a claim for breach of third party beneficiary contract under Florida law; and

(E)     Count II of the Counterclaim fails to adequately allege the essential elements of a claim for tortious interference with business relationships under Florida law.

## II.     MEMORANDUM OF LAW

**A.     A Florida company that merges with a Delaware corporation legally ceases to exist as of the date of the merger.  Because the event giving rise to all four counts of CLV's Counterclaim occurred subsequent to CLV's merger with MicroBilt, CLV's claims should be dismissed on the basis that CLV lacks capacity to sue and is not the real party in interest.**

CLV's Counterclaim alleges that on "August 31, 2010, CLV . . . merged . . . with MicroBilt Corporation, . . . a Delaware corporation."  [Counterclaim, ¶ 20]     The Counterclaim further alleges that "[a]fter the merger, MicroBilt requested and obtained approximately 200 sub codes for end users of CLV . . . that existed at the time of the Merger."  [Counterclaim, ¶ 27]     The only reasonable inference that may be drawn from those two allegations, considered together, is that MicroBilt, as the entity that retained the ability to act post-merger, was the surviving entity subsequent to the merger, and that CLV was a non-surviving constituent entity to the merger.

### 1.     *CLV lacks capacity to sue pursuant to Federal Rule of Civil Procedure 17(a).*

"The capacity doctrine relates to the issue of 'a party's personal right to litigate in a federal court.'"  *Glickstein v. Sun Bank/Miami, N.A.*, 922 F.2d 666, 670 (11th Cir. 1991)

(quoting 6A C. Wright, A. Miller & M. Kane, *Federal Practice and Procedure* § 1542, at 327 (2d ed. 1990)).   Federal Rule of Civil Procedure 17(b), which governs the issue of capacity to sue, states in pertinent part:

> Capacity to sue or be sued is determined as follows:  (1) for an individual who is not acting in a representative capacity, by the law of the individual's domicile; (2) for a corporation, by the law under which it was organized; and (3) for all other parties, by the law of the state where the court is located . . . .

Fed. R. Civ. P. 17(b).  Thus, because this Court is located in Florida, and CLV is alleged to be a Florida limited liability company [Counterclaim, ¶ 1; TPC, ¶ 1], Florida law must be relied upon to determine CLV's capacity to sue post-merger.  Fed. R. Civ. P. 17(b)(2)-(3).

Section 608.4383, Florida Statutes, which governs the effect of a merger on a Florida limited liability company which merges with a foreign corporation, states in pertinent part:

> When a merger becomes effective:  (1) Every limited liability company . . . that is a party to the merger merges into the surviving entity and the separate existence of every limited liability company . . . that is a party to the merger, except the surviving entity, ceases.  (2) The title to all real estate and other property, or any interest therein, owned by each domestic limited liability company and other business entity that is a party to the merger is vested in the surviving entity without reversion or impairment by reason of this chapter. . . . (4) Any claim existing or action or proceeding pending by or against any limited liability company or other business entity that is a party to the merger may be continued as if the merger did not occur or the surviving entity may be substituted in the proceeding for the limited liability company or other business entity which ceased existence.

§ 608.4383, Fla. Stat. (emphasis added).  Thus, Florida law provides that except for pending suits and existing claims, a Florida limited liability company which merges into a surviving foreign corporation ceases to exist.  *Id.*

In other contexts, this court has held that an entity which lacks separate legal existence likewise lacks capacity to sue.  *See Avant v. Rice*, 1992 WL 359633 (M.D. Fla. 1992); *Thompson v. Sarasota County Police Dep't*, 2009 WL 1850314 (M.D. Fla. 2009).

There are no published opinions interpreting the effect of § 608.4383, Florida Statutes, upon a non-surviving Florida limited liability company's capacity to sue or be sued based on events which occurred post-merger.   However, several federal courts have interpreted Delaware's merger statute, Delaware Code Title 8, section 259,[3] which is substantially the same as section 608.4383, Florida Statutes, and have held that under Delaware law, when a merger becomes effective, all entities except the surviving corporation cease to exist, and consequently only the surviving corporation retains capacity to sue or be sued post-merger.[4]

---

[3]   Section 259 states, in pertinent part:  "When any merger . . . shall have become effective under this chapter, for all purposes of the laws of this State the separate existence of all the constituent corporations, or of all such constituent corporations except the one into which the other or others of such constituent corporations have been merged . . . shall cease . . . ."  Del. Code tit. 8, § 259.

[4]   *See, e.g., Campbell v. Bluebeard's Castle Inc.*, 2008 WL 2048361 (D.V.I. 2008) (relying on Delaware merger law to interpret Virgin Island merger statute, which statute was nearly identical to the Delaware statute (and to § 608.4383, Florida Statutes, quoted above), and holding that because the constituent corporation defendant in that case legally ceased to exist subsequent to a merger, it lacked capacity to be sued post-merger (citing, *inter alia, Nat'l Union Fire Ins. Co. v. Stauffer Chemical Co.*, 1991 Del.Super. LEXIS 269, at *7 (Del.Super.Ct. July 15, 1991); *Beam v. Monsanto Co., Inc.*, 414 F. Supp. 570, 579 (W.D.Ark. 1976); *Basch v. Talley Indus., Inc.*, 53 F.R.D. 9, 11 (S.D.N.Y. 1971); *Sevits v. McKiernan-Terry*, 264 F. Supp. 810, 811 (S.D.N.Y. 1966) (holding that under Delaware law, the emerging corporation after a merger is the only corporation with capacity to be sued); *Allegany Envtl. Action v. Westinghouse Elec. Corp.*, 1998 U.S. Dist. LEXIS 1883, at *5 (W.D.Pa. 1998) ("[U]nder Delaware law it is settled that the separate corporate existence of a constituent corporation ceases upon merger and the emerging corporation is the only corporation with capacity to be sued . . . ."); *see also Damon Alarm Corp. v. Am. Dist. Tel. Co.*, 304 F. Supp. 83, 84 (S.D.N.Y. 1969) ("Delaware law [8 Del.C. § 259] provides that when a merger becomes effective the separate existence of all corporations except the

CLV's Counterclaim alleges two distinct acts which give rise to its claims against Chex, both of which occurred <u>after</u> CLV merged with MicroBilt.

The alleged factual basis for Count I of CLV's Counterclaim is that Chex, in "mid-October, 2010" (i.e., subsequent to the CLV/MicroBilt merger on August 31, 2010) refused to provide MicroBilt with certain "sub codes," and thereby allegedly breached its contractual duty to CLV as a third-party beneficiary to a contract between Chex and MicroBilt. [Counterclaim, ¶¶ 28, 30-32]  In Florida, a cause of action for breach of contract accrues at the time of the breach.  *See Holiday Furniture Factory Outlet Corp. v. Fla. Dep't of Corr.*, 852 So. 2d 926, 928 (Fla. 1st DCA 2003).

The alleged factual basis for Counts II, III, and IV of the Counterclaim is that Chex misappropriated CLV's trade secrets in violation of FUTSA by attaching the Invoice Exhibit to Chex's Complaint.  [Counterclaim, ¶¶ 33-44]  The Complaint, with the attached Invoice Exhibit, was filed on November 4, 2010, i.e., more than two months after the alleged merger occurred.[5]  All four-counts of the Counterclaim therefore accrued after the date when CLV ceased to exist as a legal entity.  *See* § 608.4383, Fla. Stat.; § 95.031, Fla. Stat.

Because CLV ceased to exist subsequent to the merger, and all four claims in CLV's Counterclaim accrued post-merger, CLV lacks capacity to bring those claims.  Instead, as discussed below, MicroBilt, as the surviving corporate entity following its merger with CLV,

---

survivor shall cease to exist. Consequently, the moving defendant no longer exists and the action cannot be maintained against it."  (citation omitted)).

[5]  For the reasons discussed in footnote 1, above, the Court may take judicial notice of the date that Chex filed its Complaint and the Invoice Exhibit thereto without converting this motion to dismiss into a motion for summary judgment.  *See Bryant*, 187 F.3d at 1278; *Brooks*, 116 F.3d at 1369.

is the only entity with capacity to sue Chex, and is the real party in interest as to CLV's purported Counterclaim.

> **2.**     ***MicroBilt is the real party in interest to CLV's Counterclaim pursuant to Federal Rule of Civil Procedure 17(a).***

Under Federal Rule of Civil Procedure 17(a), "an action must be prosecuted in the name of the real party in interest." Fed. R. Civ. P. 17(a).  The purpose of the real party in interest rule is to protect the defendant against a subsequent action by the party actually entitled to recover. *Steger v. General Electric Co.*, 318 F.3d 1066, 1080 (11th Cir. 2003) (citing Rule 17 advisory committee notes (1966)).  MicroBilt, as the surviving entity subsequent to its alleged merger with CLV, is therefore the real party in interest.

As alleged in the Counterclaim, MicroBilt is a Delaware corporation.  [Counterclaim, ¶ 20]   Pursuant to the pertinent portion of Delaware's merger statute governing the legal effect of a merger upon the rights of a Delaware corporation:

> all property, real, personal and mixed . . ., as well for . . . all other things in action or belonging to each of [the non-surviving constituent entities] shall be vested in the corporation surviving or resulting from [the merger]; and all property, rights, privileges, powers and franchises, and all and every other interest shall be thereafter as effectually the property of the surviving or resulting corporation . . . .

Del. Code tit. 8, § 259; *see also Halliburton Co. Benefits Comm. v. Graves*, 463 F.3d 360, 370-71 (5th Cir. 2006) ("When companies merge under Delaware General Corporation Law, the surviving corporation succeeds to both the rights and obligations of the constituent corporation, including rights and obligations of every nature, whether they be in contract or in tort.").

Rule 17(a) does not require dismissal for failure to prosecute in the name of a real party in interest, but instead allows, after objection, for ratification, joinder or substitution of the real party in interest. Fed. R. Civ. P. 17(a). However, outright dismissal is appropriate here because, for the reasons discussed below, CLV has failed to state a claim as to any of the four-counts of the Counterclaim.

**B.** **Florida's "litigation privilege" provides all persons involved in judicial proceedings, including parties and counsel, an absolute privilege from civil liability for acts taken in relation to those proceedings. Because Chex allegedly published trade secret information solely in its pleadings, Counts II through IV of the Counterclaim are barred by the litigation privilege.**

Under Florida law, "absolute immunity must be afforded to any act occurring during the course of a judicial proceeding . . . so long as the act has some relation to the proceeding." *Green Leaf Nursery v. E.I. DuPont De Nemours & Co.*, 341 F.3d 1292, 1302 n.8 (11th Cir. 2003). This litigation privilege extends to all "participants in judicial proceedings," including parties and counsel. *Levin, Middlebrooks, Mabie, Thomas, Mayes & Mitchell, P.A. v. United States Fire Ins. Co.*, 639 So. 2d 606, 608 (Fla. 1994).

In *Levin* the Florida Supreme Court considered whether the litigation privilege extends beyond torts in which the alleged falsity of statements causes harm (such as libel), to tort claims such as tortious interference. The *Levin* Court broadly held that:

> absolute immunity must be afforded to any act occurring during the course of a judicial proceeding, regardless of whether the act involves a defamatory statement or other tortious behavior such as the alleged misconduct at issue, so long as the act has some relation to the proceeding. The rationale behind the immunity afforded to defamatory statements is equally applicable to other misconduct occurring during the course of a judicial proceeding. Just as participants in litigation must be free to engage in unhindered communication, so too must those participants be free to use their best judgment in prosecuting or defending a lawsuit without fear of having to defend their actions in a subsequent civil action for misconduct.

*Levin*, 639 So. 2d at 608.  Thus, absolute immunity arises "upon the doing of any act required or permitted by law in the due course of the judicial proceedings."  *Id*.  More recently, the Florida Supreme Court expanded its holding in *Levin* to "hold that the litigation privilege applies in all causes of action, statutory as well as common law."  *Echevarria, McCalla, Raymer, Barrett & Frappier v. Cole*, 950 So. 2d 380, 380-81 (Fla. 2007).

As alleged in CLV's Counterclaim:

> When Chex filed the Complaint in the within [sic] action, it attached to the Complaint proprietary and confidential information consisting of (a) the names of each of the end users of CLV and Solutions; (b) the amount of Information that CLV and Solutions purchased for each of its end users in a given period of time; (c) the pricing terms on which CLV and Solutions purchased the Information and (d) other confidential details regarding the end users of CLV and Solutions.

[Counterclaim, ¶ 29]  CLV does not allege that Chex disseminated this purportedly trade secret information in any manner other than by filing it as an exhibit to Chex's Complaint in this action.   [*Id*.]

Pursuant to Rule 10(c), "a written instrument that is an exhibit to a pleading is a part of the pleading for all purposes."  Fed. R. Civ. P. 10(c).  Thus, effectively, CLV's Counterclaim seeks to impose statutory liability based upon statements made in Chex's pleadings.  It cannot reasonably be contested that pleadings are "statements made in connection with a judicial proceeding," or that the making of allegations in pleadings are an "act required or permitted by law in the due course of the judicial proceedings."  *Levin*, 639 So. 2d at 608.

CLV may argue that this Court has previously considered "whether the litigation privilege protects arguably misleading or deceptive documents which are served with the

11

process and complaint to initiate a case," and held the privilege does not bar such claims as a matter of law. *See North Star Capital Acquisitions, LLC v. Krig*, 611 F. Supp. 2d 1324, 1330 (M.D. Fla. 2009). However, the facts at issue in *North Star* are entirely distinguishable here.

*North Star* addressed the question of whether a letter, which allegedly violated the Florida Consumer Collection Practices Act (FCCPA), was protected under the litigation privilege merely because it was delivered to the claimant along with the complaint and summons in that action, and was, according to the counterclaim defendants in that case, part of settlement negotiations between the parties. *Id.* at 1329-30. This Court rejected application of the privilege on the bases that: (i) "the purpose of serving the summons and complaint upon a defendant is to give that party notice of the lawsuit and assert the court's jurisdiction over that person, not to initiate settlement proceedings or to collect a debt," and that "additional material included with the summons and complaint are not process [and] were arguably not being used for the purpose for which service of the summons and complaint are designed." *Id.* at 1332.

Here, the statements at issue are part of the very pleadings themselves, and are therefore, indisputably, statements made in the course of a judicial proceedings subject to absolute immunity. *Levin*, 639 So. 2d at 608. Moreover, unlike in *North Star*, here Chex attached the Invoice Exhibit to the Complaint for the purpose for which such attachments are expressly authorized and intended under Federal Rules of Civil Procedure 8 and 10. That is, to provide concrete factual support for its claim – as alleged in Count III of the Complaint – that Chex had invoiced CLV for its fees based on the Consumer Credit Data CLV provided to its End Users, and that CLV breached its Resale Agreement with Chex by failing to timely

pay those fees as to the particular End Users at issue.  [Doc. 1, ¶¶ 14, 30-38 (Complaint, Count III) & Doc. 1, pp. 27-44 (Invoice Exhibit)]  Exhibits such as the Invoice Exhibit are expressly authorized under Federal Rule of Civil Procedure 10(c), and were arguably required by the federal pleading standard – as recently applied by the Supreme Court in *Iqbal* and *Twombly* – for Chex to adequately allege its claim against CLV in Count III.  *See Iqbal*, 129 S.Ct. at 1949 ("A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do' . . . . [, n]or does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'"  *Id.* (quoting *Twombly*, 550 U.S. at 557)).

Finally, CLV may argue that the litigation privilege is an affirmative defense which may not be asserted pursuant to a motion to dismiss, but instead must be asserted pursuant to a motion for summary judgment.  *See North Star*, 611 F. Supp. 2d at 1329 ("Florida courts have indicated that the litigation immunity privilege is an affirmative defense." (citing *Am. Nat'l Title & Escrow of Fla., Inc. v. Guarantee Title & Trust Co.*, 810 So. 2d 996, 998 (Fla. 4th DCA 2002)).  However, where, as here, a claim "affirmatively and clearly" establishes that the challenged conduct relates to the litigation, the privilege may be asserted in a motion to dismiss to bar the claim.  *See Jackson v. BellSouth Telecom.*, 372 F.3d 1250, 1277 (11th Cir. 2004) ("[T]he litigation privilege, may be considered in resolving a motion to dismiss when the complaint affirmatively and clearly shows the conclusive applicability of the defense to bar the action . . . .  Here, the complaint 'affirmatively and clearly' establishes that the challenged conduct related to the . . . litigation, and therefore, that the litigation privilege bars the action." (internal citation and quotation omitted)).

**C.**     **Counterplaintiff's adoption of the allegations of all previous counts in all later counts is impermissible, and Counts II through IV of the Counterclaim should therefore be dismissed.**

Each count of the CLV's Counterclaim [Counterclaim, ¶¶ 30, 33, 38, 43] utilizes what the Eleventh Circuit has described as impermissible "shotgun pleading," where "[e]ach count incorporates by reference the allegations made in [the general allegations and] . . . the allegations of any count or counts that precede it." *Magluta v. Samples*, 256 F.3d 1282, 1284 (11th Cir. 2001). Consequently, as stated in *Magluta*:

> each count is replete with factual allegations that could not possibly be material to that specific count, and that any allegations that are material are buried beneath innumerable pages of rambling irrelevancies. This type of pleading completely disregards Rule 10(b)'s requirement that discrete claims should be plead in separate counts, *see Anderson v. Dist. Bd. of Tr.*, 77 F.3d 364, 366-67 (11th Cir. 1996), and is the type of complaint that we have criticized time and again.

*Id.* at 1284 (11th Cir. 2001) (citations omitted); *see also Strategic Income Fund, L.L.C. v. Spear, Leeds & Kellogg Corp.*, 305 F.3d 1293, 1295 & nn. 9-10 (11th Cir. 2002).

As stated by the Eleventh Circuit "when faced with complaints like this one, we have vacated judgments and remanded with instructions that the district court require plaintiffs to replead their claims." *Magluta*, 256 F.3d at 1284. Here, to the extent that the Court does not otherwise dismiss CLV's Counterclaim, Chex asks that the Court enter an order requiring CLV to replead its Counts II through IV of its Counterclaim without utilizing impermissible shotgun pleading.

**D.** **Count I of the Counterclaim fails to adequately allege the essential elements of a claim for breach of third party beneficiary contract under Florida law.**

In addition to the reasons discussed in Part II.A, above, Count I of CLV's Counterclaim should be dismissed for failure to state a claim upon which relief may be granted.

Under Florida law:

> To plead a cause of action for breach of a third party beneficiary contract . . . a plaintiff must allege (1) the existence of a contract in which plaintiff is not a party, (2) 'an intent, either expressed by the parties, or in the provisions of the contract, that the contract primarily and directly benefit' the plaintiff, (3) breach of that contract by one of the parties and (4) damages to plaintiff resulting from the breach.

*Rinker v. Carnival Corp.*, 2010 WL 4811760 (S.D. Fla. 2010) (quoting *Caretta Trucking, Inc. v. Cheoy Lee Shipyards, Ltd.*, 647 So. 2d 1028, 1031 (Fla. 4th DCA 1994)); *see also Atl. Marine Fla., LLC v. Evanston Ins. Co.*, 721 F. Supp. 2d 1244, 1250 (M.D. Fla. 2010).

Here, CLV alleges that: (i) Chex is a party to a resale agreement between Chex and MicroBilt; (ii) Chex refused to provide certain Consumer Credit Data to MicroBilt; (iii) CLV was a sales agent for MicroBilt; and (iv) CLV was harmed due to Chex's refusal to provide Consumer Credit Data to MicroBilt.  [Counterclaim, ¶¶ 22, 28, 31, 32]  However, looking to the elements of the claim stated above, CLV fails to allege the essential elements of its claim. CLV does not allege:  (i) that it was not a party to the agreement; (ii) the terms of the agreement that Chex breached, or even that a breach occurred; (iii) that CLV and MicroBilt intended their agreement to primarily benefit CLV as a third-party; or (iv) how CLV was damaged, if such a breach in fact occurred.  [*Id.*]  As a result, even when accepted as true, the

allegations in Count I of CLV's Counterclaim simply do not satisfy the minimal pleading standards under the federal rules of civil procedure.

To survive a motion to dismiss, a complaint must plead enough factual matter, that, if taken as true, suggests that the elements of the cause of action will be met.  *Watts v. Florida Int'l Univ.*, 495 F.3d 1289, 1296 (11th Cir. 2007).  "Factual  allegations must be enough to raise a right to relief above the speculative level on the assumption that all of the complaint's allegations are true." *Bell Atl. Corp. v. Twombly*, 127 S.Ct. 1955, 1965 (2007).

A counterplaintiff must plead enough facts to state a plausible, and not merely conceivable, basis for the claim. *Id*.  "Dismissal is also warranted under Rule 12(b)(6) if, assuming the truth of the factual allegations of the plaintiff's complaint, there  remains a dispositive legal issue which precludes relief."  *Bryant v. Mostert*, 636 F. Supp. 2d 1303, 1309 (M.D. Fla. 2009) (citing *Brown v. Crawford County, Ga.*, 960 F.2d 1002, 1009-10 (11th Cir. 1992)).

As to the first element, the Counterclaim alleges that there is a "contract between MicroBilt and Chex whereby MicroBilt is authorized to sell Information through its sales agents and end users."  [Counterclaim, ¶ 31]  This is the only allegation in the Counterclaim alleging the existence of a contract between MicroBilt and Chex (the "Chex/MicroBilt Contract") or the terms of same.  A copy of the Chex/MicroBilt Contract is not attached as an exhibit to the Counterclaim.

While the first element of a breach of third party beneficiary contract has arguably been alleged (although the near complete absence of ultimate facts as to the existence and

terms of the Chex/MicroBilt Contract makes that a close question), the remaining elements of such a claim have not been alleged.

As to the second element, "[u]nder Florida law, a third party is an intended beneficiary of a contract between two other parties only if a direct and primary object of the contracting parties was to confer a benefit on the third party.  If the contracting parties had no such purpose in mind, any benefit from the contract reaped by the third party is merely "incidental," and the third party has no legally enforceable right in the subject matter of the contract." *Bochese v. Town of Ponce Inlet*, 405 F.3d 964, 982 (11th Cir. 2005).  "[T]o plead a cause of action for breach of a third party beneficiary contract, a plaintiff must plead . . . an intent, either expressed by the parties, or in the provisions of the contract, that the contract primarily and directly benefit C, the third party." *Intercoastal Realty, Inc. v. Tracy*, 706 F. Supp. 2d 1325, 1329 (S.D. Fla. 2010) (citing *Caretta Trucking*, 647 So. 2d at 1031)).

Because, here, the Counterclaim does not allege ultimate facts giving rise to a reasonable inference that Chex and MicroBilt intended their contract to "primarily and directly benefit" CLV, it should be dismissed for failure to state a claim.  *See Steadfast Ins. Co. v. Corporate Prot. Sec. Group, Inc.*, 554 F. Supp. 2d 1335, 1339 (S.D. Fla. 2008) (holding that because the complaint failed to sufficiently allege that both parties to the contract intended the plaintiff's third-party beneficiary status, the claim was properly dismissed for failure to state a claim (citing *Caretta*)); *Duval Motor Co. v. Dell Fin., LLC*, 2009 WL 1515628 (M.D. Fla. 2009) (same; citing *Steadfast*).

As to the third element, while the Counterclaim does allege that Chex "caused damage to CLV . . . as third-party beneficiar[y] of the MicroBilt-Chex contract" by "refusing

to provide sub codes to MicroBilt for 50 of the end users of CLV," it does not allege that Chex breached the terms of that contract by doing so.  In that the only contractual term alleged is that MicroBilt was "authorized to sell" such codes, but not that Chex was contractually obligated to provide them to MicroBilt (or, if so, under what circumstances it was required to do so) CLV has failed to allege sufficient ultimate facts to show that the third element of this claim has been met.

As to the fourth element, as discussed in Part II.A, above, subsequent to the alleged merger between MicroBilt and CLV, CLV ceased to exist as an entity.  Thus, because Chex did not allegedly refuse to provide MicroBilt with the requested sub codes until "after the merger" [Counterclaim, ¶¶ 27-28, 30], to the extent *arguendo* that a breach occurred it could only have injured MicroBilt because CLV no longer existed as a legal entity post-merger.

Thus, because CLV has failed to allege sufficient ultimate facts to raise a reasonable inference that the second through fourth required elements of a claim for breach of a third party beneficiary contract have been met, it should properly be dismissed for failure to state a claim upon which relief may be granted.

E.   **Count II of the Counterclaim fails to adequately allege the essential elements of a claim for tortious interference with business relationships under Florida law.**

In addition to the reasons discussed in Part II.A-C, above, Count II of CLV's Counterclaim should be dismissed because it fails to state a claim upon which relief can be granted.

To sufficiently state a claim for tortious interference with an advantageous business relationship under Florida law, the claimant must plead four elements:

> (1) the existence of a business relationship, not necessarily evidenced by an enforceable contract; (2) knowledge of the relationship on the part of the defendant; (3) an intentional and unjustified interference with that relationship by the defendant; and (4) damage to the plaintiff as a result of the breach of the relationship.

*Hodges v. Buzzeo*, 193 F. Supp. 2d 1279, 1286 (M.D. Fla. 2002) (citations omitted). "An action for tortious interference requires a business relationship 'evidenced by an actual and identifiable understanding or agreement which in all probability would have been completed if the defendant had not interfered.'"[6]

As to the first element, a complaint: "has to indicate which business relationships Defendants allegedly interfered with; it is not sufficient to state that Defendants interfered with the relationships between Plaintiffs and unidentified museums, galleries, art and science institutes." *Geller*, 2010 WL 4867540 at *4.

As discussed by the Supreme Court in *Ashcroft v. Iqbal*, a court considering a motion to dismiss should begin by identifying allegations that, because they are mere conclusions, are not entitled to the assumption of truth. 129 S. Ct. 1937, 1950 (2009). While legal conclusions can provide the complaint's framework, they must be supported by factual allegations. *Id.* (citing *Twombly*).

Here, CLV's Counterclaim conclusorily alleges that by publishing CLV's purportedly confidential information (by attaching the Invoice Exhibit to the Complaint), Chex "interfered with the business relationship between CLV . . . and each of its end users,"

---

[6] *Geller v. Von Hagens*, 2010 WL 4867540 (M.D. Fla. 2010) (quoting Ethan *Allen, Inc. v. Georgetown Manor, Inc.*, 647 So. 2d 812, 815 (Fla.1994)); *see also Hodges*, 193 F. Supp. 2d at 1287 ("[t]he standard for courts to use in determining if the required element of an advantageous business relationship has been properly pled . . . is whether the parties' understanding would have been completed if the defendant had not interfered" (citing, inter alia, *Ethan Allen*)).

thereby damaging "the relationship between CLV . . . and its end users. . . ."  [Counterclaim, ¶¶ 36]  Other than those conclusory allegations, which may not be considered under *Twombly* and *Iqbal*, the Counterclaim fails to allege:   (i) that Chex's actions induced a breach of contract between CLV and its unspecified end users; (ii) that there was some other non-contractual "actual and identifiable understanding or agreement" between CLV and its end users which in all probability would have been completed if Chex had not published the purportedly confidential information in its pleadings; (iii) or the specific identity of the end users with which Chex's actions purportedly interfered.  Based on those failures, CLV fails to state a claim upon which relief may be granted.  *Geller*, 2010 WL 4867540, at *4-5 (M.D. Fla. 2010); *Ethan Allen*, 647 So. 2d at 815; *Hodges*, 193 F. Supp. 2d at 1287.

As to the third element of the tort – an intentional and unjustified interference with the business relationship – "[f]or the interference to be unjustified, the interfering defendant must be a third party, a stranger to the business relationship." *Salit v. Ruden, McClosky, Smith, Schuster & Russell, P.A.*, 742 So. 2d 381, 386 (Fla. 4th DCA 1999).  "'[A] defendant is not a 'stranger' to a business relationship if the defendant has <u>any beneficial or economic interest in . . . that relationship</u>.'"  *W.D. Sales and Brokerage LLC v. Barnhill's Buffet of Tenn., Inc.*, 362 Fed.Appx. 142, 143, 2010 WL 227586, *1 (11th Cir. 2010) (quoting *Palm Beach County Health Care Dist. v. Prof'l Med. Educ., Inc.*, 13 So. 3d 1090, 1094 (Fla. 4th DCA 2009)).

Here, the relationship allegedly interfered with was that between CLV and its "end users."  However, as alleged in the Counterclaim, CLV's business relationship with its end users was authorized through CLV's entry into a 2004 "Unwritten Agreement" between CLV

and Chex "whereby Chex would sell Information[7] to CLV for CLV's resale to its customers, who are referred to as 'end users.'" [Counterclaim, ¶¶ 11, 33]

Thus, as alleged in the Counterclaim, Chex is not "a third party, a stranger to the business relationship" between CLV and its end users.  *Salit*, 742 So. 2d at 386; *see also Scelta v. Delicatessen Support Services, Inc.*, 57 F. Supp. 2d 1327, 1357 (M.D. Fla. 1999) (granting motion to dismiss tortious interference claim on the basis that "Plaintiff has failed to allege that Defendant . . . is a third party to the alleged employment relationship or contract, if one existed"); *cf. Edwards v. Prime, Inc.*, 602 F.3d 1276, 1302-03 (11th Cir. 2010) (affirming order granting motion to dismiss tortious interference claim on the basis that "the amended complaint fails to allege any facts indicating that [the defendants] were strangers to the business relationships with which they allegedly interfered" (applying Alabama law)).  CLV's allegation as to the "Unwritten Agreement" [Counterclaim, ¶¶ 11, 33] also supports dismissal on the basis that Chex is not a stranger to CLV's relationship to its end users because, under the Unwritten Agreement, Chex has a "beneficial or economic interest" in that relationship.  *W.D. Sales*, 362 Fed.Appx. at 143; *Palm Beach*, 13 So. 3d at 1094.

As to the fourth element, the Counterclaim fails to allege <u>any</u> ultimate facts showing, even generally, that CLV's relationships with its third-party end users were injured, or how those relationships were injured (if they were indeed injured), by Chex's allegedly wrongful

---

[7]   "Information," as that term is defined in the Counterclaim [Counterclaim, ¶ 4], is the term used by CLV to describe the purportedly confidential and proprietary information included in the Invoice Exhibit to Chex's Complaint – the publication of which allegedly gave rise to the interference by Chex between CLV and its "end users."  [*Id.*, ¶ 36]

publication of confidential information in the pleadings.  Certainly CLV has failed to allege the specifics as to how its business relationship with any particular end user was damaged.[8]

Finally, because Chex filed its Complaint after CLV allegedly merged with MicroBilt, any damage that was incurred as a result was incurred by MicroBilt, not CLV. *See Bryant*, 636 F. Supp. 2d at 1309.

**WHEREFORE**, for the foregoing reasons, Counterclaim Defendant Chex Systems, Inc. respectfully requests that this Court dismiss all four counts of the four-count counterclaim filed by CL Verify, LLC for failure to state a claim upon which relief can be granted and for lack of capacity to sue.

Dated this 13th day of January, 2011.

TANNER BISHOP

By: */s/ Thomas E. Bishop*
        Thomas E. Bishop

Florida Bar Number 956236
Stuart F. Williams
Florida Bar Number 670731
Helen A. Peacock
Florida Bar Number 0016196
One Independent Drive, Suite 1700
Jacksonville, Florida 32202
(904) 598-0034/(904) 598-0395 (fax)
*tbishop@tannerbishoplaw.com*
*swilliams@tannerbishoplaw.com*
*hpeacock@tannerbishoplaw.com*
*Attorneys for Chex Systems, Inc.*

---

[8] *See Geller*, 2010 WL 4867540, at *5 ("Regarding damages, where there are no damages to the plaintiff, he or she has no cause of action for interference with advantageous business relationship. The same flaw is evident throughout the Plaintiffs' Complaint: the facts are not plead in accordance with the new *Iqbal* standard. Stating that Defendants interfered with Plaintiffs' relationships with unidentified museums and galleries is not sufficient . . . .").

## CERTIFICATE OF SERVICE

I hereby certify that on this 13th day of January, 2011, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system which will send a notice of electronic filing to the following:

Paul J. Maselli, Esquire
Maselli Warren, P.C.
600 Alexander Road
Princeton, NJ 08540

Ryan D. Barack, Esquire
Kwall Showers & Barack, P.A.
133 N. Fort Harrison Avenue
Clearwater, Florida 33755

*Attorneys for CL Verify, LLC and DP Bureau, LLC*

David M. Wells, Esquire
Katherine M. Herbenick
Gunster, Yoakley & Stewart, P.A.
One Enterprise Center
225 Water Street, Suite 1750
Jacksonville, Florida 32202

*Attorneys for Chex Systems, Inc.*

*/s/ Thomas E. Bishop*
Attorney

00020782-3